COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Powell and Senior Judge Annunziata
Argued at Alexandria, Virginia


JAMES LUTHER BEVEL

                                              MEMORANDUM OPINION[*] BY
v.        Record No. 2373-09-4          JUDGE ROSEMARIE ANNUNZIATA
                                                 SEPTEMBER 14, 2010

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Burke F. McCahill, Judge

Bonnie H. Hoffman, Deputy Public Defender, for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


The question of first impression to be decided on appeal is, when a defendant dies

pending direct appeal, whether a motion for abatement *ab initio* of a criminal conviction may be

denied upon a showing of good cause by the Commonwealth. For the reasons stated below, we

find that the trial court did not abuse its discretion in denying the motion. We affirm.

I.  BACKGROUND

James Luther Bevel (appellant) was convicted by a jury of incest involving his daughter

in violation of Code § 18.2-366. The victim was a minor at the time of the offense.[1] The trial

court sentenced Bevel to fifteen years imprisonment, fined him $50,000, and imposed $2,740 in

court costs. After timely submitting his notice of appeal and filing the relevant transcripts to the

Court, but before submitting the petition for appeal required by Rule 5A:12, appellant died.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant sexually abused his daughter from 1992-1994.

Following his death, appellant's counsel filed a motion to dismiss the conviction in the trial court. The trial court concluded it no longer had jurisdiction over the case, and denied the motion. Counsel then filed with this Court a motion to abate the conviction *ab initio*. This Court remanded the case to the trial court with directions to "hold a hearing and abate the prosecution *ab initio* unless good cause is shown by the Commonwealth not to do so." Bevel v. Commonwealth, No. 2646-08-4 (Va. Ct. App. Aug. 26, 2008).

At the hearing on remand, A.M.,[2] appellant's daughter and the victim of the crime, presented testimony in opposition to the motion, as did her sister, C.O., who also claimed appellant had sexually abused her.

A.M. spoke of the relief and closure that appellant's conviction brought as well as the value she placed on the verdict's confirmation of the wrongfulness of her father's acts. She stated,

> to have this [conviction] thrown out like it never happened, it
> undermines the effort. It undermines the effort to resolve the issue,
> to bring the issue to society and forefront to discuss, to find a
> solution. It . . . throws [the conviction] back like it never
> happened. . . . I wish I could just abate my memories and abate the
> whole thing, but the reality is it happened.

A.M. also related the importance of having appellant's life accurately portrayed in history, an outcome she feared abatement of his conviction would preclude.[3]

C.O. testified that to have a jury "affirm that these things did indeed happen and that it wasn't going to be tolerated," was "incredibly validating" and "very powerful." C.O. felt abatement would "wipe[] away" her family's efforts to seek justice.

---

[2] We will use the initials of the sexual abuse victims in this opinion.

[3] She also expressed concern about the effect abatement would have on future custody hearings in another state involving her minor sister; that concern did not form part of the trial court's rationale for its decision.

At the conclusion of the evidence, the trial court, finding good cause to do so, denied appellant's motion to abate the conviction. In reaching its conclusion, the trial court declined to accept appellant's argument that it was inappropriate for the trial court to consider the victim's interests and those of the victim's family in resolving the issue. The trial court also declined to base its decision solely on the values inherent in the appellant's right to pursue an appeal, a right that death had curtailed.

Acknowledging the interests of appellant's family in abating proceedings that may have resulted in an erroneous conviction and that may pose a financial burden on the appellant's estate, the trial court weighed against those interests a number of other factors, including the impact on the victim were abatement ordered, and nature of the crime, which it found to be particularly heinous because it involved the appellant's unremorseful and repeated sexual abuse of his own child. It rejected counsel's argument that, since punishment was futile under the circumstances, no purpose would be served by leaving the judgment of conviction intact except, perhaps, to preserve the victim's right to restitution.

The trial court explained its perspective on the propriety of considering the impact on the victim, noting Virginia's strong public policy in support of the rights of victims articulated, in part, by Code § 19.2-11.01. It also found the interests of the victim to be broader than an interest in restitution. The trial court explained that, for the victim, the prosecution of the offense "was not just a trial . . . [but] part of a long, . . . painful and emotional process that culminated in the trial," validating the victim's story and affirming her belief that the appellant's acts were wrong. The trial court acknowledged,

> It did take . . . a great deal of courage for this young woman to come forward. She was under a lot of pressure from her other family and, . . . from supporters of Mr. Bevel and the outside world not to prosecute.

The trial court also underscored the impact that abatement *ab initio* could have on society and on society's perceptions of its institutions. It referenced the respect to be accorded the factual determinations of the jury, the "powerful symbol" that a guilty verdict represents for both society and the victim, and the possible adverse effect on society's "respect and confidence in [its] institutions and . . . the rule of law" were the proceedings to be abated *ab initio*. The trial court noted the "huge potential for sending the wrong message" about "what has really transpired" were the motion for abatement to be granted.

Finally, the trial court determined that the validity of a conviction is not to be measured solely by the right to appellate review. The trial court weighed the right to appellate review against what it described as the implied "fiction" underlying the appellant's premise for abatement *ab initio* that the appellant would have succeeded had the appeal been heard. Buttressing its view that the right to appellate review should not, in itself, be determinative of the issue, the trial court further reasoned that, upon conviction, the presumption of innocence no longer applies and that the verdict is presumed to be regular and correct and is accorded finality under Rule 1:1.

The trial court, thus, found good cause to deny appellant's motion for abatement *ab initio*, and this appeal followed.

## II. ANALYSIS

Appellant's counsel claims the trial court abused its discretion in finding good cause to deny the motion to abate appellant's conviction *ab initio*. Specifically, counsel asserts: (1) death during the pendency of an appeal necessitates abatement of the conviction *ab initio*; (2) if there is to be a good cause exception to abating the conviction *ab initio*, the trial court misapplied the factors it considered when it found good cause to deny the motion; (3) the trial court erred in considering evidence regarding the potential impact abatement *ab initio* might have on the custody of

appellant's minor child; and (4) the evidence was inappropriate and insufficient to prove there was good cause to deny the motion.[4]

Abatement is "[t]he act of eliminating or nullifying" and "[t]he suspension or defeat of a pending action for a reason unrelated to the merits of the claim." Black's Law Dictionary 3 (9th ed. 2009). The abatement of a prosecution effectively encompasses dismissal of all stages of the case, from indictment through the pending appeal.

The trial court's conclusion that good cause existed to deny the motion to abate is subject to an abuse of discretion standard of review. See Stephens v. Commonwealth, 274 Va. 157, 162, 644 S.E.2d 276, 278 (2007) (a trial court's denial of an application for a name change for lack of good cause is subject to an abuse of discretion standard); Harris v. Commonwealth, 258 Va. 576, 583, 520 S.E.2d 825, 829 (1999) (pursuant to Code § 19.2-265.3, a trial court's decision to grant the Commonwealth's motion for *nolle prosequi* based on a showing of good cause is a matter of discretion, and is subject to an abuse of discretion standard on appeal).

We first address the contention that death during the pendency of an appeal necessitates abatement *ab initio*. This Court addresses issues of potential abatement on a case-by-case basis and, in some circumstances, we have opted to dismiss cases as moot rather than abate the convictions *ab initio*. See, e.g., Tolliver v. Commonwealth, No. 0471-94-3 (Va. Ct. App. Feb.

_____

[4] The opening brief poses the following issue for review: "Whether there should be a 'good cause' exception which would permit denying abatement *ab initio* of criminal convictions in individual cases for [appellants] who die while their cases are pending direct appeal." The argument section of the brief, however, does not address whether there should be a good cause exception and, instead, argues that abatement *ab initio* is the appropriate method to dispose of criminal cases when the appellant dies before the appeal process is complete. Because the brief fails to address whether there should be a good cause exception to abatement *ab initio* in his brief, we deem this issue waived, and decline to address it on appeal. See Rule 5A:20(e) (requiring appellants to brief the "principles of law, the argument and the authorities relating to each question presented"). See also Wilson v. Commonwealth, 54 Va. App. 631, 638, 681 S.E.2d 74, 78 (2009) ("Pursuant to [Rule 5A:20], we have held that '[u]nsupported assertions of error do not merit appellate consideration.'" (quoting Jones v. Commonwealth, 51 Va. App. 730, 734, 660 S.E.2d 343, 345 (2008))).

27, 1995).  The Supreme Court of Virginia has done likewise.  See, e.g., Barber v. Commonwealth, Nos. 930409 & 930492 (Va. Nov. 9, 1993).  Appellant cites no authority, and we have found none, in support of the argument that abatement *ab initio* is required in the circumstances under review.

Appellant's counsel next contends the trial court misapplied the factors it considered when it found good cause to deny the motion.  Noting the varied approaches taken and rationales proffered by the courts that have addressed the issue of abatement *ab initio*, the trial court identified the following factors as appropriate to consider in effecting the mandate of this Court: 1) the nature of the crime; 2) the appellant's right to seek post-trial review; 3) the nature of the appeal afforded; 4) the appellant's obligation to pay fines, restitution, and costs; 5) the anticipated costs to the state associated with allowing the appeal to go forward with a substituted party; 6) the principle of finality reflected and implemented by Rule 1:1; 7) the impact on the victim; 8) the impact on the appellant's family; and 9) the presumption of correctness in which the trial court's conviction is clothed and the concomitant loss of the presumption of innocence. The trial court also noted its concern that society's interest in bringing criminals to justice and the values reflected in that interest not be jeopardized.[5]

In determining the factors to consider, the trial court also reviewed the dispositions of such motions by other courts that had addressed the question.  See, e.g., Surland v. State, 895A.2d 1034 (Md. 2006); Alabama v. Wheat, 907 So.2d 461, 462 (Ala. 2005).  The

---

[5] The trial court was guided, in part, by its review of Timothy A. Razel: Note, Dying to Get Away With It: How The Abatement Doctrine Thwarts Justice-And What Should Be Done Instead, 75 Fordham L. Rev. 2193, 2224-26 (2007); Joseph Sauder, Comment, How a Criminal Defendant's Death Pending Direct Appeal Affects the Victim's Right to Restitution Under the Abatement Ab Initio Doctrine, 71 Temple L. Rev. 347 (1998); and John H. Derrick, Abatement Effects of Accused's Death Before Appellate Review of Federal Criminal Conviction, 80 A.L.R. Fed. 446.  Razel highlighted the fact that in the past fifteen years, eight states have moved away from abating convictions *ab initio*, at least, in part, because of a growing concern over the adverse effect abatement has upon the victims of the crimes.

dispositions were varied depending on the factors considered, and included ordering abatement *ab initio*, denying such requests and leaving the conviction unabated, ordering abatement of the proceedings with the exception of an order for restitution benefiting the victim, and ordering the substitution of parties in order that the appeal go forward.[6] After reviewing the record, we cannot conclude that the trial court abused its discretion in considering the factors listed above in its determination that the Commonwealth established good cause to deny the motion for abatement *ab initio*.

We also conclude that, in weighing the evidence in light of the factors it determined should be considered, the trial court did not abuse its discretion in finding that good cause existed to deny the motion to abate appellant's conviction *ab initio*. In evaluating the argument for abatement resting on appellant's right to appeal and his family's interest in having a possibly erroneous conviction nullified, the trial court considered the nature of the appeal under Virginia law and the need to entertain what it characterized as the implied "fiction" of an erroneous conviction. In light of the latter, it concluded that the correctness and finality with which a judgment is clothed under Rule 1:1, the loss of the presumption of innocence upon conviction, and the respect to be accorded to the jury's fact finding and conclusions weighed in favor of denying the motion to abate the proceedings *ab initio*. The trial court also considered and gave weight to the heinous nature of the offense and the adverse impact that abatement of the proceedings *ab initio* would have on the victim, A.M., who had reached closure and validation of her story only after a " long, . . . painful and emotional process," to bring her father's wrongful conduct to light. Finally, it found granting the motion to abate the proceedings *ab initio* could

---

[6] In <u>Wheat</u>, 907 So.2d at 462, the court simply noted in the record that the appeal was filed by the defendant but not heard because of the defendant's death.

diminish society's "confidence in [its] institutions" and its interest in bringing criminal offenders to justice.

## III.  CONCLUSION

On this record, we find no abuse of discretion in the trial court's identification of the factors to be considered and the evidence it admitted in determining whether the Commonwealth established good cause to deny the motion for abatement *ab initio*.  We, further, find no abuse of discretion in the trial court's conclusion that the Commonwealth established good cause, and we affirm the trial court's ruling on the merits.

<u>Affirmed.</u>